## Borough of Brookville, Appellant, v. The Public Service Commission et al.

504

Submitted April 16, 1931.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM, BALDRIGE and DREW, JJ.

*W. N. Conrad,* for appellant.

*Daniel H. Kunkel,* Legal Assistant, and with him *E. Everett Mather,* Assistant Counsel, and *John Fox Weiss,* Counsel, for appellee.

*Raymond E. Brown,* and with him *David I. McCahill,* for intervening appellees.

OPINION BY BALDRIGE, J., July 8, 1931:

The appellant complains of the action of the Public Service Commission in granting a certificate of public

convenience on the joint application of the Solar Electric Company and the Pennsylvania Electric Company, evidencing the commission's approval of the sale of all the property and franchises of the Solar Electric Company to the Pennsylvania Electric Company.

The Solar Electric Company is a corporation, organized January 20, 1897, for the purpose of supplying light, heat and power, by means of electricity, to the public in Brookville, with a capital stock of $20,000 which was increased in 1924 by a capital stock dividend to $75,000. The total assets under balance sheet of 1929 were $190,542.66, made up as follows:

| | |
|---|---:|
| Fixed capital | $130,390.15 |
| Cash | 600.00 |
| Notes receivable | 61.99 |
| Prepayments | 11,343.86 |
| Reacquired bonds | 20,000.00 |
| Deferred charges | 28,146.66 |
| Total assets | $190,542.66 |

The Pennsylvania Electric Company, which was formerly the Penn Public Service Corporation, furnishes service, by means of electricity, in Jefferson County and fifteen neighboring counties. The Penn Public Service Corporation was formed in 1919 by a merger and consolidation of a number of smaller companies and changed its name in 1927 to the Pennsylvania Electric Company, and has outstanding 850,000 shares of no par, common stock, having a stated value of $4,675,000, and has issued also $10,072,000 of outstanding bonds. The total assets under its balance sheet are $85,392,732.63.

The consideration to be paid by the Pennsylvania Electric Company for the sale of all the property, franchises and assets of the Solar Electric Company is the assumption of all the debts and liabilities of the latter and procuring the surrender and cancella-

tion of that company's outstanding capital stock. All the capital stock of the Solar Electric Company is now owned by the Pennsylvania Electric Corporation, a Delaware corporation, which also owns all the capital stock of the Pennsylvania Electric Company.

The petitioners averred that the service will be improved and can be furnished to the territory now being served by the Solar Electric Company more economically by the Pennsylvania Electric Company.

A protest was filed by the Borough of Brookville, setting forth, inter alia, that an equity proceeding is pending in Jefferson County, attacking the right of the Solar Electric Company to keep and maintain its poles, lines and facilities upon the streets of the Borough of Brookville without securing municipal consent; and that the Borough of Brookville proposes to take an appeal from the dismissal of an application for a rehearing in an application for approval of the Public Service Commission to exercise the right, power and privilege of constructing and operating an electric light plant for the purpose of supplying electricity to the public in the borough. We do not place any particular weight to these grounds. But, it appears that after this proceeding was started, and before an order was made, a complaint of certain residents of the Borough of Brookville against the rates of the Solar Electric Company was filed before the Public Service Commission, and is undisposed of. It must be conceded that counsel for the complaint of the residents of the Borough of Brookville has not proceeded with commendable diligence to have that case heard by the commission. But the commission, with its broad authority, had the right to fix a time for a hearing, and, if the petitioners failed to prosecute their complaint, to dismiss the proceeding.

The protestants further allege that the fair value of the Solar Electric Company for rate-making pur-

poses is but $75,000; that the balance sheets, financial statements and annual reports of the Solar Electric Company do not clearly reflect its net income, nor properly classify its expenditures; that salaries and operating and general expenses have been inordinately increased, etc.

The Penn Public Service Corporation, on November 1, 1924, filed its petition with the Public Service Commission, seeking approval of its acquisition of the capital stock of the Solar Electric Company. One of the reasons for denying the application was that the proposed purchase price was materially in excess of the actual value of the property to be acquired. An appeal was taken to this court, See Penn Public Service Corp. v P. S. C., 88 Pa. Superior Ct. 369. In affirming the commission's report, we said, ''The findings of the Public Service Commission make it clear that the project of the appellant to buy the electric company and merge it with the Penn Public Service Corporation is not advantageous to the borough. The agreement between the electric company and the Penn Public Service Corporation called for the payment by the latter of $150,000 for the property and franchises of the electric company. This the commission found was greatly in excess of the value of the electric company.''

Not only the rights of the immediate parties to this sale are involved, but the public's interest is to be protected, and it may be detrimentally affected if an excessive consideration is paid. The purchaser is assuming the debts of the Solar Electric Company but the record is silent whether the price is fair or exorbitant. The debts may be utterly disproportionate to the value of the property. It is not unreasonable to conclude that the amount of the investment will call for a corresponding return in dividends and it may fairly be assumed that their payment would fall

finally on the consumers in the borough. Whether the consideration is commensurate with the fair value of the property is, therefore, an essential fact which should have been found and not ignored. It makes no difference whether this consideration is in the form of cash, securities, or an assumption of the company's obligations. Evidence should have been offered to show the value of the property and that fact determined before the approval of its sale. In view of the increase in dividends, from $600 in 1923 to $19,500 in 1926, and the large amount of reserves, totalling $70,993.61, an inquiry into the conduct of the company's management and its financial setup was pertinent. These matters, as well as the alleged improper classification of the income, extravagant expenditures and the per cent of the net earnings made upon the capital investment, etc., were proper subjects of inquiry. The appellant in attempting to ascertain the facts was met with the objection that this is not a rate case and the objections to this line of questioning were sustained. If this sale to a corporation of such a magnitude is now approved, the property and assets of the Solar Electric Company would be absorbed on a valuation of $190,542.66, which is higher than we heretofore held was excessive. It was testified that the assets of the Solar Electric Company will be shown as assets of that company on the books of the Pennsylvania Electric Company; that there will be no change in the status of the Solar Electric Company in any future inquiry for rate-making purposes, but no separate set of books will be kept for that company. The president of the Pennsylvania Electric Company, moreover, would not say, in answer to a direct question, that the Pennsylvania Electric Company's books would reflect the earnings and disbursements of what is now known as the Solar Electric Company, distinct from the gross earnings and dis-

bursements of the Pennsylvania Electric Company. It would seem as a practical matter that it would be very much more difficult and expensive to ascertain these salient facts from the books of a company which has absorbed about 150 smaller systems, in the event of the rate case being prosecuted. The parties affected by this litigation, which has run through a series of proceedings, have already had a heavy financial load to carry; it ought not to be made more burdensome.

The commission in its approval of the sale of the property and franchises recognized the bearing it may have upon the fixing of rates and endeavored to protect the petitioners in the rate case, as it stipulated as follows: "That the commission shall not be bound by the approval herein expressed to accept the C. D. 8126, J. B. Stewart et al. v. Solar Electric Company, the amounts stated in the record of the instant proceedings as the value and/or costs of the plant and works and other property of the Solar Electric Company."

We do not hold that the filing of a complaint against the rates of one of the companies involved, subsequent to an application for a merger, would necessarily delay the approval thereof, unless it appears that the rate proceeding was brought in good faith and on reasonable grounds, and that the proposed merger would substantially affect it. Nor do we intimate that the present rates are unjust and unreasonable, but, in view of the various proceedings dealing with the supplying of electricity in the Borough of Brookville, which have been vigorously contested, and of the financial matters to which we have referred, we feel that it is only just and proper that the commission should have disposed of the rate case, which is so intimately related to the present proceeding, before approval of the sale of the property and franchises of the Solar Electric Company to the Pennsylvania Electric Company, and that

proof should have been made that the assumption of the debts was a fair and reasonable consideration.

The order of the Public Service Commission is reversed and the record is remitted to the end that the fair value of the property may be determined and the rate case disposed of before passing upon the approval of the sale.